IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIELLE WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 24-cv-09730 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| OPPORTUNITY FINANCIAL, LLC, TODD G. SCHWARTZ and PAMELA D. JOHNSON, | ) |
| | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Danielle Williams brings this action against Opportunity Financial, LLC ("OppLoans"), Todd G. Schwartz, and Pamela D. Johnson, the Chief Executive Officer and Chief Financial Officer of OppLoans, respectively, related to a consumer loan she received from OppLoans's partner, Community Capital Bank. She brings her claims under an Indiana consumer protection statute and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964.[1] Defendants move to compel arbitration of plaintiff's claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4, and to stay this action pending the completion of the arbitration proceedings. For the reasons stated below, defendants' motion is granted.

**BACKGROUND**

Plaintiff filed this lawsuit as a putative class action under Fed. R. Civ. P. 23 related to a $1,800 loan she obtained on the internet from OppLoans, an Illinois-based online money lender. (Dkt. 1 ¶¶ 7, 13, 14.) Her loan came with an interest rate of 159.24%. (Dkt. 1 ¶¶ 14; Dkt. 1-1 at 2.)

---

[1] The claim arises under 18 U.S.C. § 1964. The court has jurisdiction under 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b).

1

Plaintiff is a resident and citizen of Indiana. (Dkt. 1 ¶ 6.) She alleges that the Promissory Note and Disclosure Statement ("Promissory Note") governing her loan is subject to Indiana's interest rate cap: 36% per annum on consumer loans like hers. *See* Indiana Uniform Consumer Credit Code ("IUCCC"), Ind. Code § 24-4.5-3-508. (Dkt. 1 ¶ 33.) The statute entitles debtors to a refund "if the debtor has paid an excess charge" and statutory damages for overcharges. § 24-4.5-5-202(3)-(4). (Dkt. 1 ¶ 41.)

Plaintiff alleges that OppLoans uses a "Bank Partner Model" through which it partners with banks chartered in states that do not have such interest rate caps. (Dkt. 1 ¶ 20.) It originates 98% percent of its loans through this business model. For loans obtained this way, OppLoans "markets, brokers, arranges, and facilitates the loan and has the right to obtain the 95% to 100% interest." (Dkt. 1 ¶¶ 21, 24.) OppLoans also holds the "predominant economic interest." (Dkt. 1 ¶ at 23.) It pays its bank partners a small fee for each loan they originate, and its partner banks "stand[] to lose virtually nothing if a loan goes bad and stand[] to gain practically nothing if a loan is repaid." (Dkt. 1 ¶ at 27.)

Plaintiff argues that OppLoans employs this business model to avoid state interest caps by partnering with banks in states without caps. In this case, it partnered with Community Capital Bank, which is chartered in Utah. (Dkt. 1 ¶ at 1-1 at 11.) Because Utah does not have a usury law similar to Indiana's that caps interest rates on consumer loans, plaintiff alleges that OppLoans's bank partner system enables it to evade Indiana's 36% interest rate cap. (Dkt. 18 at 2.) This partnership forms the basis of plaintiff's claims.

The Promissory Note identifies OppLoans as the "loan servicer" and Community Capital Bank as the lender. (Dkt. 1-1 at 3 ¶¶ 1, 4.) The Promissory Note also includes an arbitration clause (the "Arbitration Clause"). (Dkt. 1-1 at 5-6.) The Promissory Note states, "By signing

2

this note… [y]ou acknowledge that you have read, understand, and agree to all of the terms of this Note, including the Arbitration Clause." (*Id*.) The Arbitration Clause requires the parties to arbitrate "all 'Claims' of one party against another," defines "Claims" to have "the broadest reasonable meaning consistent with this Clause," and "includes all claims even indirectly related to your application, the loan, this Note and your agreements with us." (Dkt. 1-1 at 5.)

Particularly pertinent to the instant motion, the Promissory Note contains a general choice-of-law clause which provides that the "[n]ote is governed by federal law and the laws of the State of Utah, except that the Arbitration Clause is governed by the [FAA]." (Dkt. 1-1 at 4.) In a section of the Arbitration Clause addressing "What law applies?", the Arbitration Clause states that "the FAA governs" and that the "[a]rbiter must apply substantive law consistent with the [FAA]." (Dkt. 1-1 at 5.) Defendants now move to compel arbitration and stay this action pending the completion of arbitration.

## LEGAL STANDARD

The FAA embodies "both a liberal federal policy favoring arbitration ... and the fundamental principle that arbitration is a matter of contract." *Gupta* v. *Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) (quoting *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 339 (2011)). Courts must compel arbitration when the following elements are met: "an enforceable written agreement to arbitrate, a dispute that falls within the scope of the arbitration agreement, and a refusal to arbitrate." *Fahy* v. *Minto Dev. Corp.*, 722 F. Supp. 3d 784, 796 (N.D. Ill. 2024) (citing *Zurich Am. Ins. Co.* v. *Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005); 9 U.S.C. § 4. The party opposing arbitration bears the burden of showing that an arbitration agreement is unenforceable, *Fahy*, 722 F. Supp. 3d at 796–97, which may be demonstrated "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, "such

as fraud, duress, or unconscionability." *AT&T Mobility LLC*, 563 U.S. at 339 (citation and quotation marks omitted).

## ANALYSIS

Plaintiff does not dispute that she signed the Arbitration Clause or that her claims fall within its scope. Instead, she argues that the Arbitration Clause is unenforceable. More specifically, she argues that Indiana's cap on interest rates for consumer loans should apply because Community Capital Bank, which she characterizes as the "true lender," issued her loan. She argues the Arbitration Clause prospectively waives her federal and state statutory rights when read together with the Promissory Note's general choice-of-law provision.

**I. Prospective Waiver**

Under the "prospective waiver" doctrine, an arbitration agreement that forces a party to waive statutory rights is unenforceable. *Am. Exp. Co.* v. *Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (citation omitted); *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").[2] The doctrine is not implicated in this case, however.

---

[2] Defendants cast doubt on whether the prospective waiver doctrine applies to waivers of statutory rights under state law. (Dkt. 14 at 13, n.2.) The Supreme Court has recognized, however, that the prospective waiver doctrine can extend to waivers of state statutory rights. *Viking River Cruises, Inc.* v. *Moriana*, 596 U.S. 639, 653 n.5 (2022) ("[T]he principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes … is erroneous."). Courts in this circuit have begun to adopt this approach. *See, e.g.*, *Harris* v. *W6LS, Inc.*, No. 23 CV 16429, 2024 WL 2319716, at *9 (N.D. Ill. May 22, 2024) (appeal pending) (interpreting *Viking River* to "establish[] that the prospective waiver doctrine applies to waivers of substantive state law rights, in addition to federal rights."); *Harris* v. *FSST Mgmt. Servs., LLC*, 686 F. Supp. 3d 734, 745 (N.D. Ill. 2023) (finding prospective waiver "of federal *and state* statutory rights") (emphasis added).

4

The Promissory Note's contract-wide choice-of-law provision states that it is "governed by federal law and the laws of the State of Utah, *except* that the Arbitration Clause is governed by the [FAA]." (Dkt. 1-1 at 4, ¶ 18) (emphasis added). The Arbitration Clause plainly explains that the arbitrator must "apply substantive law consistent with the FAA." (Dkt. 1-1 at 5.) Nothing in the Arbitration Clause requires the arbitrator to apply the substantive law of Utah. The merits of a choice-of-law analysis "must be decided in the first instance by the arbitrator," and at that time, the arbitrator will resolve whether Utah law governs plaintiff's claims. *Vimar Seguros Y Reaseguros* v. *M/V Sky Reefer*, 515 U.S. 528, 541 (1995); *see also Kemph* v. *Reddam*, No. 13 CV 6785, 2015 WL 1510797, at *5 (N.D. Ill. Mar. 27, 2015) (citing *Vimar* and finding that the arbitrator has "the authority to determine whether [a] choice-of-law provision is valid").

In closely analogous cases, courts have found that an arbitrator need not apply Utah law when a choice-of-law provision states that FAA governs the arbitration agreement.[3] *See Michael* v. *Opportunity Fin., LLC*, No. 1:22-CV-00529-LY, 2022 WL 14049645, at *5 (W.D. Tex. Oct. 24, 2022) (concluding after review of an identical choice-of-law provision that, first, the arbitrator is not required to apply Utah law where the provision exempts the arbitration clause and second, that provision does not preclude plaintiff from pursuing a RICO claim in arbitration); *Johnson* v. *Opportunity Fin., LLC*, No. 3:22CV190, 2023 WL 2636712, at *5 (E.D. Va. Mar. 24, 2023) (finding that the prospective waiver doctrine "is not implicated" because "the choice-of-law

---

[3] Plaintiff relies on an out-of-circuit case for the argument that the choice-of-law provision in the Promissory Note means that the substantive law of Utah will be applied. *See Rose Leaf Cleaning, Inc.* v. *Sonder Hosp. USA, Inc.*, No. 22 CIV. 7462, 2024 WL 3937600, at *1 (S.D.N.Y. Aug. 26, 2024). That case relied upon a state-specific rule that "New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract." *Id.* at *5 (citations and quotations omitted). Plaintiff asserts that the IUCCC renders invalid a term that "[a]n agreement that the law of another state shall apply" with respect to a consumer loan subject to the statute. Ind. Code §24-4.5-1-201(6)(a). Plaintiff has not provided any authority, however, suggesting that Indiana law prohibits conflicts analysis altogether, as does the New York statute implicated in *Rose Leaf*.

5

clause in the loans explicitly state that [the FAA], along with Utah law, will apply."); *Fama* v. *Opportunity Fin., LLC*, No. 3:23-CV-05477-BAT, 2023 WL 9954028, at *7 (W.D. Wash. Oct. 10, 2023) (calling argument that the arbitration agreement requires application of Utah law "erroneous").

As plaintiff highlights, the prospective waiver doctrine is commonly implicated in the context of tribal lending agreements that require arbitrators to apply tribal law, but that line of cases is distinguishable. In those cases, arbitrators are required to apply tribal law. For example, in *Fahy*, 722 F. Supp. 3d at 790, 798–800, the court found that the plaintiff's state substantive rights were prospectively waived because the arbitration clause itself required that "[t]he arbitrator shall apply applicable substantive law consistent with the Governing Law [of the tribe] set forth above, and the Federal Arbitration Act" and that "'[t]ribal law shall exclusively apply' in the event of a 'bona fide dispute' between the borrower and the lender." The court held that such provision would not permit the plaintiff to pursue federal rights that are unavailable under tribal law. *Id.* at 800. Similarly, in *W6LS*, 2024 WL 2319716, at *1, 9, the court found that the plaintiff's state substantive rights were prospectively waived because the arbitration agreement dictated that "federal law and the law of the Otoe-Missouria Tribe of Indians [] appl[ies]."

And while the arbitration agreement at issue in *Harris v. FSST Mgmt. Servs., LLC*, 686 F. Supp. 3d 734, 739–40 (N.D. Ill. 2023), did "not explicitly reference the application of tribal law in the choice-of-law clause," other provisions of the agreement "effectively allow[ed] tribal courts to apply tribal law to an arbitration award in every instance." The court noted that "references [to] the FAA 'read in context, do not mend the prospective waiver of federal law wrought by the arbitration provision's other terms.'" *Id.* at 742 (internal citation omitted).

6

Consequently, the court held the arbitration agreement was an improper prospective waiver of federal and state statutory rights. *Id*.

By contrast, the arbitrator here is not mandated to apply Utah law. The arbitrator may very well determine after engaging in a choice-of-law analysis that Indiana law forbids application of Utah law, as plaintiff contends.

**II**. **Severability of Arbitration Clause**

Even if the arbitrator were to conclude that the choice-of-law provision requiring application of Utah law operates as a prospective waiver, the Arbitration Clause is severable from the rest of the Promissory Note under the rule of severability articulated in *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 445–46 (2006); *see also Vimar*, 515 U.S. at 541 (citation omitted) (reserving judgment because the choice-of-law question "must be decided in the first instance by the arbitrator"). In *Buckeye*, the plaintiffs alleged that their lender charged usurious interest rates. *Id*. at 442–43. When the lender moved to compel arbitration under the FAA, the court noted that the borrowers' challenge, namely that their loan agreements' interest rates were invalid, affected the lawfulness of the entire agreement rather than only the arbitration clause. *Id*. at 444. The court held that "an arbitration provision is severable from the remainder of the contract … [and] unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 546 U.S. at 445–46. These sorts of claims, the Court held, should be presented before the arbitrator and not the district court. *Id.* at 446.

Plaintiffs' argument—that her Promissory Note is invalid under Indiana's interest rate cap—goes beyond the validity of the Arbitration Clause. It is therefore proper for the arbitrator to resolve. Other courts have held the same. *See, e.g.*, *Carpenter* v. *Opportunity Fin., LLC*, No. 23-

7

55553, 2024 WL 1209520, at *1 (9th Cir. Mar. 21, 2024) (overturning district court's finding that "the arbitration clause is substantively unconscionable because it requires that the arbitrator apply Utah law to the loan agreement pursuant to the agreement's choice of law provision" because that is a determination for the arbitrator to make in the first instance); *Fama*, 2023 WL 9954028, at *6 (granting motion to compel when plaintiff's complaint "is that the contract, as a whole (including its arbitration provision), is rendered invalid by the usurious finance charge").

Plaintiff argues that her case is unique because the IUCCC "does prescribe its applicability to loans made to Indiana consumers by out-of-state lenders via the Internet, does prohibit waiver, does prohibit choice of law clauses, and does declare illegal any noncompliant agreements." (Dkt. 18 at 13) (emphasis in original omitted). Even if this characterization of the IUCCC is correct, the argument should be made to the arbitrator. To the extent plaintiff argues that the unique features of the IUCCC render the entire Promissory Note unlawful, "the FAA does not condition the enforceability of a written arbitration provision upon the validity of the contract within which it is contained." *Modern Space Design & Decoration (Shanghai) Co., Ltd. v. Lynch*, No. 13 C 4329, 2014 WL 4897322, at *2 (N.D. Ill. Sept. 29, 2014) (citing *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010)).

It is not evident at this time whether the arbitrator will apply Utah law when adjudicating the issues in this case, but the court will not infringe on the arbitrator's role as outlined by the FAA.[4]

---

[4] In any event, the district court will have "the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the ... laws has been addressed." *Vimar*, 515 U.S. at 540 (alteration in original) (quoting *Mitsubishi*, 473 U.S. at 638).

## **CONCLUSION**

For the reasons stated above, the motion to compel arbitration (dkt. 14) is granted.

Date: July 17, 2025

_____
U.S. District Judge Joan H. Lefkow